IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KRISTI TINGEN SHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:17CV198 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kristi Shaw ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on August 15, 2013 and August 23, 2013, respectively, alleging a disability onset date of January 1, 2004 in both applications. (Tr. at 13, 205-16.)[1] Her applications were denied initially (Tr. at 62-92, 126-33) and upon reconsideration (Tr. at

---
[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

93-121, 136-53). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 154-55.) Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing on August 10, 2015. (Tr. at 13.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through August 31, 2015, the date of his decision. (Tr. at 24.) On January 20, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> hypothyroidism; thoracic disc disease; cervical disc disease; anxiety; and depression.

(Tr. at 15.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 16-17.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with further mental limitations. (Tr. at 17.) Specifically, the ALJ found that Plaintiff can:

> sit, stand, and walk for up to six hours in an eight-hour day, can lift 50 pounds occasionally, and can lift and carry 25 pounds frequently. She is restricted to performing jobs that involve simple, routine, and repetitive tasks with a

5

> reasoning level of three as defined in the <u>Dictionary of Occupational Titles</u>. She is unable to perform high stress work that involves an assembly-line pace or that requires meeting production quotas.

(Tr. at 17.) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could not perform her past relevant work. (Tr. at 23.) However, he found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 23-24.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 24.)

Plaintiff now raises two challenges to the ALJ's decision. First, she argues that the ALJ erred in finding Plaintiff capable of performing a reduced range of medium work in the RFC. Second, she contends that the ALJ erred by failing to include fibromyalgia as a severe impairment at step two of the sequential analysis. After a thorough review of the record, the Court finds that neither of Plaintiff's contentions merit remand.

    A.    RFC Determination

In challenging the ALJ's RFC assessment, Plaintiff first contends that her "credible testimony serves to illustrate that she is unable to work due to chronic severe pain." (Pl.'s Br. [Doc. #11] at 6.) Plaintiff then recounts her testimony and argues that the testimony "is strongly supported by the record." (Pl. Br. at 7.) However, the ALJ considered Plaintiff's testimony and the record, and concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms "are not entirely credible for the reasons explained in this decision." (Tr. at 21.)

6

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record." Social Security Ruling 96–7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96–7p"); see also 20 C.F.R. § 404.1529.[4] Toward this end, the Fourth Circuit in Craig v. Chater set out a two-part test for evaluating a claimant's statements about symptoms. 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

"According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her]

---

[4] Effective March 28, 2016, see Social Security Ruling 16–3p, 2016 WL 1237954 (Mar. 24, 2016), the Social Security Administration superseded SSR 96–7p with Social Security Ruling 16–3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96–7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16–3p, and "because SSR 16–3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4–8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (unpublished) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.)." Ivey v. Berryhill, No. 1:16CV1304, 2017 WL 4236558 at *6 n.7 (M.D.N.C. Sept. 22, 2017) (Auld, M.J.).

7

symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements.'" Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). In short, objective medical evidence of pain is not required at step two of Craig. Id. However, this maxim does not render any available objective evidence irrelevant at that step. Rather, a claimant's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4); see also Hines, 453 F.3d at 565 n.3 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence.").

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In this case, after a lengthy discussion of Plaintiff's testimony, treatment records, and the medical opinion evidence, the ALJ found that Plaintiff's "hypothyroidism and her disc disease would preclude her from performing heavy exertional activities[,] but they are not of such severity as to prevent her from performing medium work." (Tr. at 22.) In reaching this conclusion, the ALJ noted that Plaintiff:

> has evidence of degenerative disc disease in the cervical and thoracic spine but she does not have MRI evidence of spinal cord compression. She has no neurological deficits indicative of a nerve root compression syndrome. A current physical examination showed minimal findings. It is noted that the claimant had minimal treatment for her chronic pain between 2006 and 2012. She currently has no signs of inflammation, has a normal range of motion, and has normal neurological findings. She has no impairment of gait or station.
>
> [Plaintiff] has not developed any complications related to her hypothyroidism. This condition is well-controlled with medication.
>
> [Plaintiff] has been treated for anxiety and depression and she is now also diagnosed with a bipolar disorder and ADD. However, her mental status findings have remained normal. She is able to care for her personal needs and

9

> live independently. In 2013, she reported that she was looking for work. She was able to make a two-week trip to Georgia with her mother in December 2014. She currently engages in self-employment activities [she distresses furniture and tries to sell it].
>
> In addition, the medical evidence and observations by the Administrative Law Judge do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are not fully credible.

(Tr. at 21-22.) Plaintiff fails to show that the ALJ's findings were unsupported by the evidence or based upon an incorrect application of law. To the extent that the ALJ's conclusion was contrary to Plaintiff's testimony, the ALJ made a credibility determination after considering Plaintiff's testimony and the applicable factors at length. Plaintiff has not shown how this credibility analysis was improper or how the ALJ's credibility determination was unsupported by substantial evidence. To the extent that Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his

decision, explained the reasons for his credibility determination, and supported that explanation with substantial evidence.

Plaintiff next contends that the RFC for medium work "is in direct contradiction with the assessment of Dr. Paul Walker." (Pl.'s Br. at 8.) However, the ALJ specifically considered Dr. Walker's October 12, 2005 examining source statement (Tr. at 20) and recounted Dr. Walker's opinion that Plaintiff "could perform sedentary exertional activities with postural and manipulative restrictions." (Tr. at 22, 311.) However, the ALJ found that "Dr. Walker's clinical findings are inconsistent with the record as a whole," and the ALJ therefore gave little weight to Dr. Walker's opinion. (Tr. at 22.) The ALJ instead gave great weight to a consultative examination by Dr. Edwin Micah dated September 25, 2013. The ALJ noted that on examination, Dr. Micah found that Plaintiff

> had no signs of inflammation or any muscle spasms. She had a full range of motion of the spine and joints. Her neurological findings were normal, including muscle strength, rated 5/5 in all four extremities. She had no impairment of gait or station and she did not require use of an assistive device.

(Tr. at 20.) The ALJ gave great weight to Dr. Micah's opinion that Plaintiff "was not physically impaired," as well as the findings of the state agency medical consultants that Plaintiff could perform a full range of medium work. (Tr. at 22.)

Plaintiff does not directly challenge the ALJ's decision to give little weight to Dr. Walker's opinion. Instead, Plaintiff notes that during the hearing, Plaintiff's counsel asked the vocational expert to list occupations consistent with Dr. Walker's opinion, and the vocational expert testified that such a person would be limited to sedentary work. (Pl.'s Br. at 8 (citing Tr. at 58).) However, "[t]o be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical

question which fairly sets out all of the claimant's impairments." McPherson v. Astrue, 605 F. Supp. 2d 744, 779 (S.D. W. Va. 2009) (citing Walker v. Bowen, 889 F.2d 47, 51 (4th Cir.1989)). "[T]he questions need only reflect those impairments that are supported by the record." McPherson, 605 F. Supp. 2d at 779-80 (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). An ALJ is not obligated to structure hypothetical questions accounting for impairments he found to be not severe or not credible when assessing the claimant's RFC, McPherson, 605 F. Supp. 2d at 779-80, nor is he required to rely on testimony resulting from such questions. Here, the ALJ gave Dr. Walker's 2005 evaluation little weight, so Dr. Walker's limitations were not included in the ALJ's hypothetical question to the vocational expert. Instead, the ALJ asked the vocational expert a hypothetical question consistent with the RFC that was ultimately adopted. As set out above, the ALJ made that RFC determination based on the evidence in the record, and he explained that determination at length. Plaintiff has not set out a basis to conclude that the ALJ erred in that determination.

Plaintiff next contends that, had the ALJ found her limited to sedentary, or even light, work, "a finding of disabled would have been directed by the Medical-Vocational Guidelines." (Pl.'s Br. at 8.) This argument is inapposite, as the ALJ made no such finding. As set out above, the ALJ made the RFC determination after a full consideration and discussion of the evidence in the record, taking into account the factors set out in the regulations, and that determination is supported by substantial evidence. The fact that some other RFC determination would have led to a different conclusion under the Guidelines is irrelevant.

Finally, Plaintiff argues that the ALJ "erroneously equated the ability to engage in some activities on her own schedule with an ability to work full-time." (Pl.'s Br. at 9.) However, as

set out above, the Social Security regulations specifically provide that activities of daily living are relevant when assessing a claimant's credibility. See 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i). Accordingly, the ALJ was entitled to consider Plaintiff's abilities to live independently, care for her personal needs, seek employment, engage in self-employment activities, and travel, as evidence that her impairments were not as limiting as she alleged. (Tr. at 22.) Moreover, the ALJ did not rely on Plaintiff's activities alone in making his adverse finding, as Plaintiff suggests. Rather, he considered her activities in conjunction with the longitudinal treatment record and objective clinical findings before discounting her credibility. As noted above, Plaintiff fails to show that these findings were unsupported by substantial evidence or that the ALJ somehow erred in making his credibility determination. In short, the Court finds no basis for remand.

B. Step Two Determination

Plaintiff next contends that the ALJ erred at step two of the sequential analysis by "completely failing to address [Plaintiff's] fibromyalgia." (Pl.'s Br. at 10.)

> Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL

13

5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

Rivera v. Astrue, No. CBD-12-1095, 2013 WL 450781, at *7 (D. Md. Aug. 22, 2013). In other words, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted). Therefore, in considering the alleged error at step two in this case, the Court also considers the ALJ's analysis at subsequent steps in the sequential analysis.

Here, the ALJ identified five severe impairments at step two of the sequential analysis: hypothyroidism, thoracic disc disease, cervical disc disease, anxiety, and depression,. (Tr. at 15.) He also categorized Plaintiff's carpal tunnel syndrome as non-severe. (Tr. at 16.) Although he failed to mention Plaintiff's fibromyalgia at this step, a review of the decision as a whole reveals that the ALJ discussed and considered this impairment later in the sequential analysis. In particular, the ALJ discussed at length Plaintiff's treatment records from Triangle Orthopaedic Associates from 2003 to 2006. (Tr. at 19-20.) These are the same treatment records that Plaintiff now cites as evidence of her fibromyalgia. These records reflect that Plaintiff complained of joint pain and widespread pain during the period from March 2005 to October 2006, and her doctors considered multiple possibilities to explain the pain. Records from May 10, 2005, August 29, 2005, April 7, 2006, May 3, 2006, and May 31, 2006 reflect "possible fibromyalgia," (Tr. at 362, 374, 386, 389, 392) although the fibromyalgia points were sometimes positive (Tr. at 374, 386) and at least one time negative (Tr. at 380). Records from August, September, and October 2006 reflect complex pain with fibromyalgia (Tr. at 395, 401,

405).[5] The ALJ considered these records at length, noting Plaintiff's "wide-spread pain." (Tr. at 19-20.) The ALJ also considered Plaintiff's testimony regarding her treatment for pain between 2004 and 2006, including specifically "pain in her hips, knees, and shoulders" and "injections that might help with fibromyalgia." (Tr. at 18.) Finally, the ALJ assigned great weight to the opinions of the State agency medical consultants (Tr. at 22). Both consultants acknowledged Plaintiff's inclusion of fibromyalgia among the 13 impairments alleged by Plaintiff in her disability applications (Tr. at 63, 80) and considered the impact of fibromyalgia as a non-severe impairment when assessing her RFC (Tr. at 70, 87). Both consultants concluded that Plaintiff could perform a full range of medium work. (Tr. at 22, 72-73, 76, 103, 107.) Similarly, consultative examiner Dr. Edwin Micah considered Plaintiff's history of fibromyalgia, along with her back pain, hypothyroidism, depression, and abnormal liver enzymes, in concluding that she was not physically limited during the time period at issue. (Tr. at 22, 510.) As with the State agency consultants, the ALJ assigned great weight to Dr. Micah's opinion. (Tr. at 22.) Thus, all of Plaintiff's evidence of fibromyalgia and chronic pain was taken into account in reaching the determination in this case. Accordingly, the ALJ's failure to separately identify fibromyalgia as a severe impairment at step two of the sequential analysis did not result in any error in any event, since all of the potentially relevant evidence was considered in formulating the RFC and reaching the determination in this case.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc.

---

[5] These treatment records also reflect multiple positive drug screens for high levels of cocaine in September and October 2006. (Tr. at 397, 401-02, 405.)

#10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of February, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge